**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

—————————————————————

| | | |
|---|---|---|
| JOHN J. SPEICHER, *et al.*, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | No.  5:22-cv-4284 |
| | : | |
| ROCKET MORTGAGE, LLC, | : | |
| Defendant. | : | |

—————————————————————

**O P I N I O N**
**Defendant's Motion to Dismiss, ECF No. 6 – Granted in part and Denied in part**

**Joseph F. Leeson, Jr.**                                                                **April 11, 2023**
**United States District Judge**

## I.        INTRODUCTION

The Plaintiffs in this case wanted to refinance their mortgage, so they completed a loan application through Rocket Mortgage, LLC. They believed everything was going well with their application, and they were ready to close on the loan after receiving the closing disclosure. However, Rocket Mortgage terminated their application before the closing. Rocket Mortgage offered to restart the application process but informed Plaintiffs that the new interest rate on their loan would be higher than the one they hoped to receive the first time around because of rising interest rates. Plaintiffs chose not to restart the application process. Instead, they brought this lawsuit against Rocket Mortgage.

The Plaintiffs claim that Rocket Mortgage, by terminating their loan application, committed a breach of contract, fraud, and violated two different consumer protection statutes (the Truth in Lending Act and the Pennsylvania Unfair Trade Practices Act). They also claim, in the alternative, that Rocket Mortgage negligently processed their loan application. In response, Rocket Mortgage filed a motion to dismiss all the Plaintiffs' claims.

The Court dismisses the breach of contract claims because the Plaintiffs failed to plead sufficient facts that a contract existed between the parties. The Court also dismisses the Plaintiffs' negligence claim because Rocket Mortgage did not owe a duty to the Plaintiffs. Finally, the Court dismisses the claim brought under the Truth in Lending Act because Plaintiffs did not specify which section of that Act Rocket Mortgage violated. The remaining claims, fraud and violation of the Pennsylvania Unfair Trade Practices Act, survive.

## II.    BACKGROUND

John Speicher and Patricia Giles, husband and wife, own a one-half share of the property located at 1111 Vision Path, Concord, North Carolina. Jeremy Speicher and Courtney Speicher, also husband and wife, own the other one-half share. The property has a residence, in which Jeremy and Courtney live, and a cottage, which is used as a part-time residence by John and Patricia.

The premises on the property were constructed using a construction loan, which was later converted into an adjustable mortgage. Though John and Patricia are the designated mortgagors, Jeremy and Courtney pay the mortgage on a monthly basis.

In 2022, John and Jeremy contacted Rocket Mortgage for the purpose of refinancing the property's mortgage. According to Plaintiffs, as the mortgage application process proceeded, "Plaintiffs locked in a fixed rate of 3.99% for thirty-year loan, with the principal amount of the loan being $647,200." Compl. ¶ 14.

Plaintiffs supplied Rocket Mortgage with all the information required for the application in a timely manner. As part of the application, John also provided information on his income, which included an explanation that his prior employer, a law firm, merged with another law firm in 2022. Jeremy and John were to be the named mortgagors.

On March 23, 2022, Rocket Mortgage sent "federally mandated disclosure forms" to the Plaintiffs. *Id.* ¶ 20. The closing disclosure's cover letter stated, "[t]his disclosure contains important

information about the mortgage loan, including the final terms and closing costs." ECF No. 1-1, Ex. A. It goes on: "If the enclosed numbers change before your scheduled closing date and time, you'll receive a new disclosure with updated final terms and costs, or before, the closing of your loan." *Id*. The cover letter also contained a signature line, stating, "By signing, you're confirming you've received this document three (3) business days prior to closing." *Id*. The Plaintiffs signed the cover letter. The closing disclosure itself set the closing date for March 30, 2022 and outlined the final loan terms and closing costs. It also disclosed that, "[y]ou do not have to accept this loan because you have received this form or signed a loan application."

After receiving the closing disclosure, Plaintiffs did not hear from Rocket Mortgage for approximately three weeks. Then, on April 15, 2022, Rocket Mortgage telephoned Jeremy and explained "that the 3.99% mortgage rate was being terminated due to lack of activity on the file for a three-week period of time." Compl. ¶ 26. Jeremy responded that the inactivity was on Rocket Mortgage's end and that Plaintiffs "were ready to have settlement on the mortgage application." *Id*. ¶ 27. During that call, Rocket Mortgage also raised "purported concerns/confusion" that John had worked for two different law firms in 2022 "and that this was causing a concern for the underwriters." *Id*. ¶ 28. Jeremy explained that the first law firm had merged with the second; he also indicated that Rocket Mortgage "might want to speak to" John directly about the matter. *Id*. ¶ 29. The call concluded with Rocket Mortgage agreeing to extend the mortgage rate commitment of 3.99% until May 2, 2022.

John emailed Rocket Mortgage on April 19, 2022, again explaining the situation with the two law firms. Rocket Mortgage replied to that email, thanking John for the explanation and stating that John's email had been forwarded to underwriting for review. Rocket Mortgage notified Plaintiffs on April 20, 2022 that it had terminated their application. *Id*. ¶ 36.

Jeremy contacted Rocket Mortgage after learning that the application had been terminated. Rocket Mortgage offered to restart the application process but advised Jeremy that the interest rate would now be 5.5%.

Plaintiffs filed suit against Rocket Mortgage, bringing seven claims: (1) Breach of Contract; (2) Negligence; (3) Fraud; (4) Breach of Contract brought by Patricia as a third-party beneficiary; (5) Breach of Contract, Specific Performance; (6) Violations of the Truth in Lending Act; and (7) Violations of the Pennsylvania Unfair Trade Practices Act. Rocket Mortgage filed a motion to dismiss Plaintiffs' Complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). *See* ECF No. 6, Mot. Plaintiffs oppose the Motion. *See* ECF No. 9, Resp.

**III.     LEGAL STANDARDS — Review of Applicable Law**

Under Rule 12(b)(6), a defendant may make a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F. 3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (cleaned up). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.

*See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (*citing Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F. 2d 1406, 1409 (3d Cir. 1991)). Additionally, when ruling on a motion to dismiss, the Court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010).

## IV.    ANALYSIS

Rocket Mortgage argues in its Motion that all seven of Plaintiffs' claims should be dismissed. The Court takes each claim in turn.

### 1.   *Breach of Contract*

A successful breach of contract claim requires that a plaintiff establish three things: (1) the existence of a contract; (2) a breach of duty imposed by the contract; and (3) the plaintiff suffered damages as a result of the breach. *See Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. Ct. 2002). In this case, Rocket Mortgage argues that there is no enforceable contract between the parties. "To satisfy the first element—the existence of a contract itself—a party must plead enough facts to demonstrate (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *Abdul-Rahman v. Chase Home Fin. Co., LLC*, No. CIV.A. 13-5320, 2014 WL 3408564, at *2 (E.D. Pa. July 11, 2014) (cleaned up). "It is hornbook law that evidence of preliminary negotiations or an agreement to enter into a binding contract in the future does not alone constitute a contract." *Channel Home Centers, Div. of Grace Retail Corp. v. Grossman*, 795 F. 2d 291, 298 (3d Cir. 1986).

Plaintiffs argue that the closing disclosure is a binding contract because it manifests both parties' intent to be bound by its terms and because its terms are sufficiently definite. The Court disagrees with both.

First, when read in its entirety, the closing disclosure does not manifest that both parties intend to be bound by its terms, quite the contrary. For example, Rocket Mortgage did not sign the closing disclosure or the cover letter of the disclosure. Although Plaintiffs did sign the cover letter, the letter explains that signature is to confirm receipt, not to accept the terms in the disclosure. The disclosure makes it clear that Plaintiffs were not accepting the loan simply because they received the disclosure, nor did they have to accept the loan because they signed a loan application. The whole purpose of supplying the disclosure at least three days prior to the closing date is so that Plaintiffs can review the terms and decide if they want to commit. As Plaintiffs acknowledge in their Complaint, Rocket Mortgage provided the disclosure in order to comply with federal law, not to manifest its intent to be bound by its terms. Nothing in the closing disclosure manifests that Rocket Mortgage intended to bind itself to the terms in the disclosure.

Second, the terms in the closing disclosure were not sufficiently definite. The cover letter of the disclosure stated, "[i]f the enclosed numbers change before your scheduled closing date and time, you'll receive a new disclosure with updated final terms and costs, or before, the closing of your loan." That sentence alone is enough to doom Plaintiffs' breach of contract claim because it shows that the terms of the applied for loan were subject to change up until the date of closing.

In sum, the closing disclosure is just one step in the loan application process. It is part of the parties' negotiations to enter into a binding contract in the future. The disclosure is not a binding contract itself. Even accepting the remaining allegations in the Complaint as true, Plaintiffs have not pled sufficient facts to show the existence of a contract. Accordingly, they have failed to state a claim for breach of contract, and the Court dismisses this claim with prejudice.[1]

---

[1] The Court dismisses this claim and the other breach of contract claims with prejudice because it is apparent from the closing disclosure that a contract was never formed between the parties as a matter of law. No amount of repleading can change that. Thus, any attempt to amend the Complaint in order to bring a breach of contract claim would be futile. *See Boyd v. New Jersey Dept. of Corr.*, 583 Fed. Appx. 30, 32 (3d Cir. 2014).

### 2. *Negligence*

Plaintiffs next allege that Rocket Mortgage negligently processed their loan application. "A plaintiff must prove four elements to establish negligence by a defendant: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Toro v. Fitness Int'l LLC.*, 150 A. 3d 968, 976–77 (2016).

According to Plaintiffs, Rocket Mortgage acted negligently by failing to understand the information that Plaintiffs submitted with their application. They also argue that Rocket Mortgage was negligent for not reaching out to Plaintiffs to gather additional information if it was needed for processing their application. Plaintiffs assert further that it was negligent for Rocket Mortgage to terminate their application instead of moving forward with the closing. Rocket Mortgage, however, argues that it did not owe a duty or obligation to Plaintiffs.

Plaintiffs argue that Rocket Mortgage owed them a duty based on public policy considerations. First, they point out that Rocket Mortgage better understands the fluctuating interest rates because it is "in the market daily." Next, they assert that Rocket Mortgage would not be prejudiced if it were held to a standard of acting with reasonable care and prudence in processing loan applications. Finally, Plaintiffs argue that it is unreasonable to place the burden on lay borrowers to ensure that their application is being processed properly because they do not have the specialized knowledge that lenders have.

Plaintiffs cite to *Grear v. U.S. Bank* to support their argument that Rocket Mortgage owed them a duty. *See* No. 1:21-CV-237-SPB, 2022 WL 4450400 (W.D. Pa. Sept. 23, 2022). *Grear* shares almost no similarities with this case. In *Grear*, the plaintiffs had a vehicle loan. *Id.* at *1. The *Grear* plaintiffs made two large payments towards their loan that U.S. Bank failed to apply to the plaintiffs' account. *Id.* Since the payments were not applied correctly, it appeared to the bank that the plaintiffs

had defaulted on their vehicle loan, and the bank repossessed the vehicle. *Id*. The plaintiffs sued U.S. Bank for negligently repossessing their vehicle, and the *Grear* court denied the bank's motion to dismiss the negligence claim. *Id*. at *1. Unlike this case, *Grear* did not involve the processing of a loan application. The *Grear* plaintiffs already had a loan with the lender and claimed that the lender had negligently repossessed their vehicle, not that the lender had negligently processed their loan application. Contrary to Plaintiffs' argument, *Grear* does not hold that a lender owes a duty to a loan applicant. Instead, *Grear* supports the uncontroversial notion that U.S. Bank should not have repossessed the plaintiffs' vehicle when the plaintiffs had not defaulted on their loan. *Grear* does not help Plaintiffs.

Rocket Mortgage cites to a case with facts that are closer to this case—*Albino Construction Co. v. Wells Fargo Bank, National Association*, No. CV 21-35, 2021 WL 2529811 (E.D. Pa. June 17, 2021). In *Albino*, the plaintiff applied for a loan from Wells Fargo under the Paycheck Protection Program (PPP). *Id*. at *1. Similar to this case, Wells Fargo denied the plaintiff's application without requesting additional information and without notifying the plaintiff about deficiencies in the application. *Id*. at *2. The plaintiff sued Wells Fargo for negligence, alleging that the bank had negligently processed the plaintiff's loan application. *Id*. The *Albino* court dismissed the plaintiff's negligence claim because it determined that Wells Fargo did not owe a duty to the plaintiff as a matter of law. *Id*. at *5.

Plaintiffs attempt to distinguish this case from *Albino* by pointing out that the plaintiff in *Albino* applied for a PPP loan. They also emphasize the fact that the plaintiff in *Albino* failed to submit the necessary information required for the loan application, whereas Plaintiffs in this case submitted the necessary information. Those differences, however, do not affect *Albino's* application to this case. Plaintiffs ignore the broad, sweeping language in *Albino*: "Albino has not cited any legal authority, and we are aware of none, that supports a finding that a lender owes a duty of care to a borrower in

the processing of a loan application." *Id.* at *4. The *Albino* court made it clear that "the cases suggest that no independent duty is created between lenders and borrowers." *Id.* (citing *Allen v. Wells Fargo, N.A.*, No. 14-5283, 2015 WL 5137953, at *5 (E.D. Pa. Aug. 28, 2015)). Like the plaintiff in *Albino*, Plaintiffs in this case have not cited to any legal authority that a lender owes a duty of care to a borrower when processing a loan application.

The Court agrees with Rocket Mortgage that Plaintiffs' public policy-based arguments for creating a duty in this case are essentially arguments that Rocket Mortgage owed Plaintiffs fiduciary duties. However, case law is clear that the lender-borrower relationship ordinarily does not create a fiduciary duty. *See, e.g., Schnell v. Bank of N.Y. Mellon*, 828 F. Supp. 2d 798, 806 (E.D. Pa. 2011) (holding "a lender acts in his financial interest and does not owe a fiduciary duty to the borrower"); *see also Caplen v. Sec. Nat'l Serv. Corp.*, 514 F. Supp. 2d 746, 752 (E.D. Pa. 2007); *I & S Assocs. Trust v. LaSalle Nat'l Bank*, Civ. A. No. 99–4956, 2001 WL 1143319, at *7 (E D. Pa. Sept. 27, 2001). It would take an unusual set of facts that puts a lender on notice of a particular vulnerability on the part of a loan applicant to give rise to a claim for negligent loan processing. In other words, to bring a claim of negligent loan processing, a plaintiff must plead facts sufficient to show that a relationship beyond the typical lender-borrower relationship existed.

Even viewing the Complaint in a light most favorable to Plaintiffs, they have not plead sufficient facts to establish anything more than the normal loan application or lender-borrower relationship. Plaintiffs applied for a loan; Rocket Mortgage misunderstood the submitted information and denied the application without seeking additional information. Plaintiffs are understandably upset with that result. Those allegations, as a matter of law, do not give rise to a claim of negligence. Accordingly, the Court dismisses this claim without prejudice.[2]

---

[2] The Court dismisses this claim without prejudice because it is not certain at this time whether an amendment to the Complaint would be futile. The same goes for the other claims that the Court dismisses without prejudice.

### 3. *Fraud*

To prove fraud, a plaintiff must show six things: (1) the defendant made a representation; (2) which is material to the transaction at hand; (3) with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) the plaintiff justifiably relied on the misrepresentation; and (6) the plaintiff's resulting injury was proximately caused by that reliance. *Blumenstock v. Gibson*, 811 A. 2d 1029, 1034 (Pa. Super. Ct. 2002). Plaintiffs allege that Rocket Mortgage made two representations that constitute fraud (the two alleged representations are somewhat at odds with one another, as parsed out below).

First, Plaintiffs claim that Rocket Mortgage fraudulently represented that Plaintiffs' application did not meet the necessary qualifications to receive the applied for loan. Compl. ¶ 59. According to Plaintiffs, Rocket Mortgage knew that Plaintiffs actually did qualify for the loan. The true purpose for terminating the loan application, according to Plaintiffs, was to avoid selling a mortgage at 3.99% interest rate. Even accepting that as true, Plaintiffs do not allege in the Complaint that they relied on that representation nor do they explain in their briefing how they relied on this representation. Common sense supports the assumption that if Plaintiffs believed they did not qualify for the loan through Rocket Mortgage, then they would seek a loan elsewhere. Indeed, Plaintiffs' Complaint and briefing strongly implies (if not asserts outright) that they believed they qualified for the loan. Since Plaintiffs do not allege that they relied on this representation to their detriment, it cannot serve as a foundation for a fraud claim. Plaintiffs' next alleged representation, however, fares better.

Plaintiffs' second allegation is that Rocket Mortgage fraudulently represented that they would receive a 3.99% interest rate for their loan. Compl. ¶ 64. This makes more sense for a fraud claim; Plaintiffs essentially allege that Rocket Mortgage kept them on the hook with the promise of a 3.99% interest rate only to terminate their application at the last minute. Rocket Mortgage then offered to

restart the application process with an increased interest rate, all the while knowing that it never intended to offer Plaintiffs the 3.99% interest rate. Rocket Mortgage argues that Plaintiffs could not have relied on this alleged misrepresentation because Plaintiffs are sophisticated parties who "could not reasonably assume that they would certainly be approved for a mortgage loan at a 3.99% interest rate." Rocket Mortgage also points to the parties' Interest Rate Agreement, which, according to Rocket Mortgage, makes it clear that the 3.99% interest rate was not guaranteed. There is likely merit to Rocket Mortgage's arguments, but the Court cannot consider the Interest Rate Agreement when adjudicating this motion to dismiss because it was not attached to nor referenced by the Complaint. Moreover, Rocket Mortgage's briefing does not address Plaintiffs' allegation that Rocket Mortgage represented it would keep the 3.99% interest rate on the table until May 2, 2022, only to terminate Plaintiffs' application before then.

Rocket Mortgage's arguments are more appropriate for summary judgment. For now, viewing the Complaint in a light most favorable to Plaintiffs, they have alleged facts sufficient for their fraud claim; Plaintiffs alleged that Rocket Mortgage represented that they would receive a 3.99% interest rate, that the rate was material to the transaction, that Rocket Mortgage never intended to give the represented rate, that Plaintiffs relied on the representation, and that they were injured by not seeking a loan elsewhere and by not receiving the represented rate. Accordingly, this claim survives the Motion to dismiss.

### 4. *Breach of Contract brought by Patricia as a third-party beneficiary*

In order to bring a claim for breach of contract as a third-party beneficiary to a contract, there must first, of course, be a contract. Plaintiffs claim that Patricia was a third-party beneficiary to the loan agreement. She therefore attempts to bring a separate claim for breach of contract as a third-party beneficiary. However, the Court has already determined that Plaintiffs did not sufficiently plead

that a contract exists in this case and dismissed the original breach of contract claim with prejudice. It follows that this claim is dismissed with prejudice too.

### 5. Breach of Contract—Specific Performance

The Court dismisses this third breach of contract claim with prejudice for the same reasons it dismissed the first two. Moreover, "[s]pecific performance is an equitable remedy for breach of contract, not an independent cause of action." *Nationwide Life Ins. Co. v. Franklin Mills Assocs. Ltd. P'ship*, No. CIV.A. 13-0038, 2014 WL 4722623, at *5 n.1 (E.D. Pa. Sept. 23, 2014).

### 6. Violations of Truth in Lending Act

The Truth in Lending Act (TILA) is meant to protect consumers by, in part, requiring those who extend credit to consumers to make certain disclosures. "Alleging a violation of the TILA in a complaint without specifying the specific TILA section or subsection is insufficient to state a plausible claim." *Rankin v. Saldutti, LLC*, No. CV 19-1508, 2020 WL 256433, at *6 (E.D. Pa. Jan. 17, 2020). In this case, Plaintiffs allege that Rocket Mortgage violated the TILA generally, but they do not specify any section or subsection that Rocket Mortgage allegedly violated. Accordingly, Plaintiffs have not plead sufficient facts to maintain a TILA claim, and the Court therefore dismisses this claim without prejudice.

### 7. Violations of Pennsylvania Unfair Trade Practices Act

The purpose of the Pennsylvania Unfair Trade Practices Act (UTPCPL) is to protect consumers from unfair or deceptive business practices. *Corsale v. Sperian Energy Corp.*, 374 F. Supp. 3d 445, 459 (W.D. Pa. 2019). The Act prohibits, among other things, unfair or deceptive acts that include "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). In this case, Plaintiffs allege that Rocket Mortgage violated the UTPCPL by engaging in fraudulent and deceptive conduct. To establish a claim for a "deceptive" act under the UTPCPL, a plaintiff must allege "(1) a deceptive act [by the defendant],

that is conduct that is likely to deceive a consumer acting reasonably under similar circumstances; (2) the plaintiffs justifiable reliance on that deceptive act; and (3) that the plaintiff's justifiable reliance resulted in ascertainable loss." *Corsale*, 374 F. Supp. 3d 445, 459.

The elements for a claim under the UTPCPL mirror those of a fraud claim. Rocket Mortgage argues that this claim should fail for the same reason it argued that Plaintiffs' fraud claim should fail—that is, that Plaintiffs could not have reasonably relied on any alleged deceptive act. Again, Rocket Mortgage's argument might be persuasive at the summary judgment stage. However, at this stage, the Court accepts the allegations made in the Complaint as true and views the Complaint in a light most favorable to Plaintiffs.

Plaintiffs alleged that Rocket Mortgage deceptively represented that Plaintiffs would receive a 3.99% interest rate, that Plaintiffs relied on that deception, and that they were injured by that deception. Accordingly, this claim survives the Motion to Dismiss.

## V.   CONCLUSION

The Court dismisses Plaintiffs' breach of contract claims with prejudice because Plaintiffs did not plead facts sufficient to show the existence of a contract. The Court also dismisses Plaintiffs' negligence claim because, absent unique facts which were not alleged by Plaintiffs, lenders do not, as a matter of law, owe a duty of care to borrowers when processing a loan application. Further, the Court dismisses Plaintiffs' TILA claim because Plaintiffs did not specify any section or subsection of that Act that Rocket Mortgage allegedly violated.

Plaintiffs did, however, plead sufficient facts for their fraud and UTPCPL claims because they allege that Rocket Mortgage knowingly misrepresented that Plaintiffs would receive a 3.99% interest rate, Plaintiffs relied on that representation, and their reliance on that representation resulted in a financial loss.

A separate Order follows.

BY THE COURT:

/s/ Joseph F. Leeson, Jr.
JOSEPH F. LEESON, JR.
United States District Judge